*Orphans' Court, Dauphin County, December 30th,* 1862.

IN THE MATTER OF MILLER'S ESTATE.

Persons were appointed to appraise the personal estate of a decedent, and also
to set aside three hundred dollars for the widow.  They set apart $41 worth
of furniture.   After the return of the appraisement to the register of wills,
one of the appraisers added $259 in money to the part given to the widow.
*Held,* That this act was irregular and void.
*Held, further,* That the widow did not have such an interest in the $259, as de-
scended to her heirs.

BY THE COURT.—From the documents and evidence returned
in this case the following state of facts appears :

On the 23d of June, 1862, some one, we know not who, for
the paper is unsigned, made out a notice in regular form, in the
name of Anna Miller, widow of Andrew Miller, deceased, directed
to John Landis, administrator of the estate, requesting to have
appraisers appointed under the act of 1851, and its supplements,
to appraise such property, as she might elect to retain out of the

[In the Matter of Miller's Estate.]

estate of her deceased husband.   The administrator treated the
notice as valid, and appointed George T. Hummel and Christian
Landis to make the appraisement, they being also the appraisers
of the general personal effects.

According to the evidence of Mr. Hummel, when they called
at the late residence of the deceased they found the widow sick,
and on inquiring whether she wanted any money set apart, said
she thought she ought to have some.   The daughter of Mr. Miller
said to appraise certain furniture named, and there was some talk
about letting her have the residue in money, but it nowhere ap-
pears that the widow consented to, or acquiesced in the arrange-
ment.   The appraisers then valued and set apart chattels to the
amount of $41, and returned that appraisement, appraising all
of the other property and money as in the hands of the adminis-
trator.

After the widow's death the administrator called on one of the
appraisers, and said that they had forgotten to include the money;
and that appraiser went into the register's office, and added to
the appraisement, as made out and returned, $259 *cash*, and also
corrected the appraisement against the administrator to the same
extent.   The other appraiser testifies that he did not hear any one
say that they would give the widow the balance of the three hun-
dred dollars in money, and knew nothing of the addition of the
$259 to the appraisement, after it was returned to the office.   We
are now asked to approve of this appraisement under the act of
Assembly.   We consider the whole action of the one appraiser not
acquiesced in by his fellow as utterly void, and we cannot lend
our sanction to what is evidently a most irregular proceeding.
One man could not make the appraisement originally, still less
could he change that which had been done by a legal board, and
regularly returned.

We do not say that in the case of a plain mistake the same
appraisers, on proper notice to the parties in interest, after being
duly convened, might not correct an error; but it could not be
done by one alone without the express sanction of the other.   It
may be that when their duty is performed and appraisement re-
turned they are *functus officio;* if so, their subsequent act is void.

The object of this contest appears to be, on the part of the
widow's family, to have the property *vested* in her to the amount
of $300, that they may take as her representatives.   We are not
called on now to decide whether the $41 did or did not vest in
her so *perfectly* as to enable *her* family to take to the exclusion
of her husband's children: that question may arise hereafter; but
we have no doubt that neither unappraised money or property
vested in the widow on her husband's death; and we are equally
clear that an unauthorized act, such as is disclosed in the testi-

mony, performed by one appraiser alone, could not vest the money in the widow *after her death.*

We shall approve of the appraisement filed for $41, and set aside the residue. It is also our duty to direct the register to cause the original appraisement of effects, in the hands of the administrator, to be restored to the situation it was in when filed in his office, and correct the alteration.